NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| VENUS SIMMONS,<br>       Plaintiff,<br><br>v.<br><br>ACTING COMMISSIONER OF SOCIAL SECURITY,<br>       Defendant. | Civil Action No. 17-6531 (SDW)<br><br>**OPINION**<br><br>February 4, 2019 |

**WIGENTON,** District Judge.

Before the Court is Plaintiff Venus Simmons' ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Douglass Alvarado's ("ALJ Alvarado") denial of Plaintiff's claim for a period of Disability Insurance and Supplemental Security Income ("SSI") benefits under the Social Security Act (the "Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper under 28 U.S.C. § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that ALJ Alvarado's factual findings are supported by substantial evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

## I. PROCEDURAL AND FACTUAL HISTORY

### A. Procedural History

On October 15, 2013 and November 1, 2013, Plaintiff applied for Disability Insurance Benefits and SSI benefits respectively, based on her diagnoses of spinal stenosis, post-traumatic stress disorder ("PTSD"), and high blood pressure.[1] (R. 245.) That claim was subsequently denied on February 27, 2014. (R. 141-46.) An application for reconsideration was then denied on August 18, 2014. (R. 151-56.) Plaintiff appealed, and ALJ Alvarado scheduled a telephone hearing for August 19, 2016. (R. 170-76.) ALJ Alvarado issued his opinion denying benefits to Plaintiff on December 28, 2016. (R. 35-53.) On January 3, 2017, Plaintiff requested that the Appeals Council review ALJ Alvarado's decision. (R. 209-11.) The Appeals Council denied the request for review on July 7, 2017, making the ALJ's decision the final decision of the Commissioner. (R. 1-5.) Plaintiff now requests that this Court reverse the Commissioner's decision and remand for an award of SSI benefits. (Compl. 2-3.)

### B. Factual History

Plaintiff is fifty-seven years old and currently lives in Newark, NJ with her two children and one grandchild. (Pet.'s Br. 9, *see* R. 62.) The Administrative Record ("Record") demonstrates that Plaintiff met with numerous doctors between 2008 and 2015 seeking treatment for the medical issues that are now associated with her disability claim. The following is a summary of the evidence.

---

[1] While these were the claims mentioned in Plaintiff's initial application, both the record and ALJ Alvarado's opinion reveal that additional impairments were considered. *See infra* Section III.

From December 7, 2012 to January 5, 2015, Plaintiff visited Jerry Jurado, M.D. ("Dr. Jurado"), her primary care physician, numerous times, primarily regarding lower back pain and difficulty walking, but also complaining of fatigue, anxiety, depression, insomnia, and nervousness. (R. 402-419.) On the referral of Dr. Jurado, Plaintiff visited Bruce Carpenter, M.D. ("Dr. Carpenter) for an MRI on April 17, 2013, which revealed moderate spinal stenosis at L4-5 and mild spinal stenosis at L5-S1. (R. 346-47.) Plaintiff next visited Ramesh Babu, M.D. ("Dr. Babu"), who advised lumbar laminectomy and fusion upon analyzing the MRI. (R. 371-72.) On October 13, 2014, Plaintiff saw Antonios Mammis, M.D. ("Dr. Mammis") for continued complaints of lower back pain. (R. 430-33.) Dr. Mammis prescribed Neurontin and Baclofen, and referred Plaintiff for physical therapy. (*Id.*) A follow-up consultation with Dr. Mammis on April 13, 2015, revealed that Plaintiff had not completed the prescription, and went to physical therapy only three times before a change in insurance. (*Id.*)

Plaintiff also alleges disability due to PTSD stemming from the shooting death of her son in 2007. (R. 245.) Medical records from Joan Schaper, APN ("Schaper") reveal that Plaintiff's grief manifested in anxiety, panic attacks, and a fear of leaving her home. (R. 332-342.) As a result, Plaintiff began to withdraw from social and religious activities. Plaintiff did note in 2008 however, that she planned to return to work. (R. 334.) Schaper prescribed Wellbutrin and Celexa, and noted that Plaintiff had good insight and fair judgement despite her diagnosis. (R. 337, 343.) Plaintiff underwent a comprehensive psychological examination on March 23, 2010, and was diagnosed with major depressive disorder, single episode, moderate. (R. 340-43.) In 2014, Edward Linehan, M.D. ("Dr. Linehan") completed a consultative mental status examination, which affirmed and expanded upon many of her prior diagnoses. (R. 366-370.) The examination outlined the anxiety Plaintiff feels in public, the nightmares brought on by thoughts of her son's

death, and concentration problems. (*Id.*) Dr. Linehan also noted that, while Plaintiff did exhibit a labile affect, she was oriented and showed no signs of any psychotic features. (R. 368.) Dr. Linehan concluded that Plaintiff seemed to operate within the low average range of cognitive abilities. (*Id.*)

In 2016, Plaintiff received a CT scan that revealed a mass on her pancreas that was consistent with carcinoma. (R. 434-44.) After undergoing surgery to remove her pancreas and spleen, a follow-up visit revealed that Plaintiff was recovering well and reported no complications. (R. 535-36.) She was discharged without requiring further follow-up, and testing on the mass came back negative for malignant cells. (*Id.*; R. 546.)

### C. Hearing Testimony

At the administrative hearing, ALJ Alvarado heard testimony from Plaintiff and Vocational Expert Rocco Meola ("VE Meola"). (R. 54-94.) Plaintiff testified that her back pain results in some difficulty walking and completing everyday tasks. (R. 70-77.) Plaintiff also testified that Dr. Jurado prescribed a cane for her to use, and she is only able to walk "16 steps" before feeling out of breath. (R. 70-71.) Plaintiff testified that she requires help to tie her shoes, feels discomfort from standing or sitting too long, has trouble sleeping, and feels sorrow because she is unable to perform standard household tasks. (R. 72-77.) Plaintiff became emotional discussing the impact of her son's death on her mental health, and described feeling depressed and anxious in crowds. (R. 77-80.)

During the hearing, the ALJ described to VE Meola a series of hypothetical people, one of whom needs to stretch after sitting at a work station for 45 minutes and sit for 1-5 minutes after standing and walking. (R. 87-93.) This hypothetical person could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, and could never climb ladders, ropes, or

4

scaffolds. (*Id.*) VE Meola testified that this hypothetical person would be able to perform Plaintiff's prior work, which he classified as a teacher aide and an assembly worker. (*Id.*).

## II.     LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This

Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (internal quotation marks omitted) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984) (citations omitted).

**B. The Five-Step Disability Test**

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show

the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . . " 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not

found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III. DISCUSSION

On December 28, 2016, ALJ Alvarado issued a decision concluding that Plaintiff is not disabled. (R. 35-47.) At step one, the ALJ found that Plaintiff is not engaged in substantial gainful employment. (R. 40.) At step two, the ALJ found that Plaintiff suffers from degenerative disc disease, pancreatic cancer, PTSD, anxiety disorder, depressive disorder, and obesity, all of which he classified as severe impairments. (*Id.*)

At step three, however, the ALJ concluded that Plaintiff's impairments do not meet or medically equal the severity of the Listings for these respective impairments in 20 CFR Part 404, Subpart P, Appendix 1. 20 C.F.R. 404 §§ 1520(d), 404.1525, 404.1526 (R. 41.) Listing 1.04 requires that the Plaintiff show a disorder of the spine resulting in compromise of a nerve root or the spinal cord. 20 C.F.R. 404, Subpt. P, App. 1. Additionally, the Plaintiff must show that this disorder results in the compression of a nerve root with loss of spinal motion, motor loss, and positive straight-leg raising studies. (*Id.*) Alternatively, the Listing may be met with a showing of either documented spinal arachnoiditis manifested by severe burning or painful dysesthesia, or lumbar spinal stenosis resulting in pseudoclaudication, and inability to ambulate effectively. (*Id.*)

9

The ALJ found that Plaintiff's medical records do not establish findings or symptoms severe enough to qualify under this Listing. (R. 41.)

The ALJ considered Listings 12.04 and 12.06 in regard to Plaintiff's mental impairments, and found that the severity of each do not meet or medically equal the criteria required. (*Id.*) In order to make this finding, the ALJ appropriately considered whether the "Paragraph B" criteria are satisfied. (*Id.*) Paragraph B requires that the mental impairments result in a marked limitation of at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; and marked difficulties in maintaining concentration, persistence, or pace, or repeated episodes of decompensation. (*Id.*) A marked limitation consists of more than a moderate limitation but less than an extreme restriction. (*Id.*)

In finding that Plaintiff's claim could not satisfy Paragraph B, ALJ Alvarado properly considered Plaintiff's mild restriction in activities of daily living, mild social functioning difficulties, and moderate concentration difficulties. (R. 41.) Although Plaintiff did testify in the hearing that she was unable to perform household tasks, ALJ Alvarado noted that her consultative examination revealed she was able to cook and get her granddaughter ready for school. He relied on the same examination to find that Plaintiff has "moderate difficulties" regarding concentration, persistence, and pace. (*Id.*) ALJ Alvarado found the last criterion, episodes of decompensation, not satisfied because nothing in Plaintiff's medical records or testimony indicated any such episodes. (*Id.*)

Before undergoing the analysis in step four, ALJ Alvarado made Plaintiff's RFC determination and concluded that Plaintiff can perform light work. (R. 42.) ALJ Alvarado referred extensively to all of Plaintiff's medical records, finding that while the medical

10

impairments could be expected to cause the alleged symptoms, the intensity, persistence, and limiting effects of these symptoms are not consistent with the medical evidence. (R. 42-46.)

ALJ Alvarado afforded both the initial state RFC assessment by Nancy Simpkins, M.D. ("Dr. Simpkins") and the subsequent rehearing assessment by Andrew Przybyla, M.D. ("Dr. Przybyla") of Plaintiff's physical impairments little weight, but concurred with their opinions that Plaintiff's impairments were non-severe. (R. 44.) ALJ Alvarado also considered the two psychiatric examinations by Seymour Bortner, M.D. ("Dr. Bortner") and Thomas Yared, M.D. ("Dr. Yared") in reaching his decision. (*Id.*) There is substantial evidence in the record to support these determinations regarding the non-severity of Plaintiff's alleged impairments, including the ALJ's reliance on Plaintiff's ability to perform daily activities, lack of expected medical treatment, and absence of any restrictions placed on Plaintiff by a treating physician. (R. 45.) Dr. Yared found on reconsideration that Plaintiff retained "adequate activities of daily life," including the ability to prepare meals, do housework, go outside when necessary, shop in stores, manage finances, and socialize, findings which closely parallel Plaintiff's own description of her daily activities in her initial application. (R. 28.; *see* R. 261-68.) Additionally, Plaintiff has not received any restrictions from any doctors, and ALJ Alvarado found that her treatment was conservative and routine in nature, and did not align with Plaintiff's claims of totally disabling symptoms. (R. 45.) Plaintiff did testify that Dr. Jurado prescribed a cane, yet there is no mention of that in her medical records, and Dr. Jurado consistently noted that Plaintiff was able to walk without assistance. (*See, e.g.* R. 424.)

At step four, after making his RFC determination, ALJ Alvarado found that Plaintiff could perform her past relevant work as an assembler. (R. 46-47.) ALJ Alvarado accurately derived his determination from VE Meola's testimony on August 19, 2016. (*Id.*, R. 87-94.) ALJ

11

Alvarado did not need to move on to step five of the analysis because Plaintiff is not disabled under the Act if she is able to perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). However, ALJ Alvarado made an alternative finding on the basis of VE Meola's testimony that Plaintiff is able to perform the requirements of occupations that exist in the national economy such as laborer, sealing machine operator, or garment folder. (R. 87-94.)

On appeal, Plaintiff seeks reversal of the Commissioner's decision and asserts that ALJ Alvarado did not properly evaluate the medical evidence, did not properly address Plaintiff's obesity, hypertension, pancreatic mass, or diabetes, and that ALJ Alvarado made an incorrect assessment of the type of work that Plaintiff can perform. (Pet.'s Br. 16-29.) This Court considers the arguments in turn and finds them each without merit.

Plaintiff first claims that ALJ Alvarado improperly evaluated Plaintiff's complaints. However, the record shows that ALJ Alvarado properly considered her complaints in conjunction with the medical evidence as a whole. Since the ALJ is the ultimate factfinder, he is given the authority to reject a claimant's testimony as incredible, provided that he can explain his reasoning. *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007). Here, ALJ Alvarado highlighted specific evidence showing that Plaintiff's daily activities and treatment were not aligned with what one would expect given her symptoms. Additionally, ALJ Alvarado credited the treatment as being relatively effective in controlling her symptoms. In sum, substantial credible evidence exists in the record to support ALJ Alvarado's findings of fact.

In regard to Plaintiff's argument that ALJ Alvarado did not properly address some of Plaintiff's impairments, the record does not provide any evidence which would show that any of these impairments present Plaintiff with any limitations, let alone limitations which would

require a finding of severe impairments. Dr. Jurado treated Plaintiff for benign hypertension and diabetes mellitus by prescribing medication and recommending dietary changes. A medical diagnosis observed by objective clinical evidence is not enough to establish severity without evidence suggesting that these diagnoses affected Plaintiff's ability to do basic work activities. Since there is no evidence in the record to support this notion, ALJ Alvarado properly found that Plaintiff's diabetes and hypertension are non-severe impairments.

Plaintiff also argues that ALJ Alvarado erred by not considering her obesity in conjunction with her other impairments. Under agency policy, the ALJ is to consider a claimant's obesity at various steps of the evaluation process. (SSR 02-1p, 2002 WL 34686281 at *1). Despite Plaintiff not alleging obesity as a disability on her application or in her testimony at the administrative hearing, ALJ Alvarado still considered it a severe impairment at step two of the process. (R. 40.) While ALJ Alvarado did not explicitly discuss whether Plaintiff's obesity combined with her other impairments made the effects greater than if they were considered separately, remand is not necessary if it would not change the outcome. Since Plaintiff did not bring up obesity at the hearing or otherwise and now offers only a generalized argument that her obesity exacerbates the other impairments, we can conclude that ALJ Alvarado properly considered this issue during his extensive analysis of the medical records as a whole. *See Rutherford v. Barnhart*, 339 F.3d 546, 553 (3d Cir. 2005).

Plaintiff also contends that ALJ Alvarado erred by not finding that her pancreatic cancer was a disabling impairment under Listing 13.20 of the Listing of Impairments. This argument is without merit, as there is substantial credible evidence in the record to support ALJ Alvarado's determination. Plaintiff was diagnosed with a pancreatic mass, and underwent surgery shortly before her administrative hearing to have her pancreas and spleen removed. (R. 535-36.)

13

Plaintiff's final diagnosis after a surgical pathology consultation was a benign tumor of the pancreas, and a post-operative visit in October 2016, revealed that Plaintiff was doing well and improving as expected. Franz Smith, M.D. ("Dr. Smith") opined that there was no need for a follow-up with Plaintiff at that time. (*Id.*; R. 546.) Therefore, Plaintiff's pancreatic impairment does not satisfy Listing 13.20 because there is no final diagnosis of cancer, and ALJ Alvarado adequately considered this impairment in his determination of Plaintiff's residual functional capacity. (R. 44.)

With respect to Plaintiff's argument that ALJ Alvarado erred as a matter of law by finding that Plaintiff could perform light work, ALJ Alvarado examined the entire record of the objective medical evidence and explained which records he afforded greater weight in reaching his RFC decision. (R. 42-46.) ALJ Alvarado followed a proper two-step process for the RFC determination, first determining whether there were medically determinable impairments and then evaluating the intensity, persistence, or functionally limiting effects of those impairments. There is substantial evidence in the record supporting ALJ Alvarado's evidentiary RFC calculus, including but not limited to treatment notes indicating no abnormalities in the musculoskeletal system, Dr. Mammis' observation that Plaintiff's degenerative changes are mild, and Plaintiff's recent treatment notes, which indicate that Plaintiff was negative for anxiety, depression, sleep disturbance, irritability, mood swings, and suicidal delusions. (R. 383-84, 482, 538-43, 584-86.) After ALJ Alvarado made his RFC determination, he found Plaintiff not disabled because she is able to perform her prior work as an assembler, which VE Meola testified can be classified with an SVP of 2. (R. 35-46.) Additionally, ALJ Alvarado also made a valid finding as to the availability of alternative jobs that exist in the national economy such as laborer and sealing machine operator that Plaintiff could perform given her RFC. (R. 46-47.) It is clear that ALJ

Alvarado relied on the VE's testimony in making his conclusions, and substantial credible evidence exists in the record to support his determination that Plaintiff is able to return to her past job or find new work.

## IV. CONCLUSION

This Court finds that ALJ Alvarado's factual findings were supported by substantial credible evidence in the record and his legal determinations were correct. Therefore, the Commissioner's determination is **AFFIRMED**. An appropriate order follows.

s/ *Susan D. Wigenton*  
**SUSAN D. WIGENTON**  
**UNITED STATES DISTRICT JUDGE**

Orig:  Clerk  
cc:    Parties